# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHELTON O. SNEED<br><br>v.<br><br>SWARTHMORE COLLEGE | CIVIL ACTION<br><br>NO. 16-43 |

**Baylson, J.**                                                                                                               **August 2, 2017**

## MEMORANDUM RE: DEFENDANT'S MOTION FOR RECONSIDERATION

On June 27, 2017, this Court denied Defendant Swarthmore College's ("College") Motion for Summary Judgment because of the lack of Supreme Court or Third Circuit case law concluding that subordinate employees can never serve as "comparators" to a supervisor such as Plaintiff Shelton Sneed. (ECF 39, 41.) The following day, the College filed a Motion for Reconsideration of that Order (ECF 42), arguing that the Court's failure to consider Monaco v. American General Assurance Company, 359 F.3d 296 (3d Cir. 2004) was a clear error of law because Monaco held that a plaintiff in a discrimination case cannot be similarly situated to those who report to him. The College also moved for reconsideration on the grounds that the Court had failed to address Sneed's burden of proving pretext. On July 13, 2017, the parties presented oral argument on the College's motion, which prompted a final round of briefing. Sneed filed a Sur-Reply on July 24, 2017 (ECF 51) and the College filed a Sur-Sur-Reply on July 31, 2017 (ECF 52).

I.    **Monaco and Its Impact on the Instant Matter**

In Monaco, the Third Circuit affirmed summary judgment for an insurance company on an age discrimination claim brought by one of its employees because the plaintiff had failed to proffer similarly situated individuals as comparators. Instead, the plaintiff, a vice president "in

1

charge of the Eastern Region, a position in which he coordinated insurance sales in several states along the eastern seaboard," had argued that various sales vice presidents and branch managers who reported directly to him were comparators. Id. at 297, 306. The court held that the similarly situated determination "triggers a fact-intensive inquiry based on a whole constellation of factors facing that individual employee" and rejected the plaintiff's argument that both he and the vice presidents and branch managers he supervised had as "the focus of [their] position[s], . . . to solicit insurance through independent brokers." Id. at 306, 306 n.13. Viewing the job responsibilities of the plaintiff, who supervised all of his employer's insurance offices in the eastern United States, as similar to those of the vice presidents and branch managers, who each bore responsibility for one office, would impermissibly render the plaintiff "similarly situated to many entry-level employees who solicited insurance," according to the court. Id. at 306 n.13.

Contrary to the College's arguments, Monaco does not hold that, as a matter of law, a supervisor can never be similarly situated to his subordinates. Rather, it emphasizes the importance of engaging in a fact-intensive inquiry regarding the actual job duties and responsibilities of the plaintiff and the alleged comparators. This Court undertook that inquiry in denying summary judgment. Sneed set forth evidence that his duties and responsibilities as a Sergeant at the College were "not much more . . . than a regular patrol officer." (ECF 31, Pl.'s Appx. in Opp. to Summary Judgment ("Pl.'s Appx."), Ex. 1, Sneed Dep. Tr. at 54.) That testimony is buttressed by the description of his position, which states that, "[d]ue to the size of the [Public Safety] Department, the Sergeant must, in addition to supervising duties, frequently perform the same tasks as the Public Safety Officers." (ECF 25, Def.'s Mot. for Summary Judgment, Ex. O, Swarthmore College Position Description at 1.)

This evidence creates a genuine dispute of material fact regarding the similarity between Sneed's and his subordinates' actual job functions, notwithstanding the fact that Sneed also had "primar[y] responsib[ility] for the effective supervision of those patrol officers assigned directly to him[]." (Id.) In terms of comparing the instant situation to Monaco, we note that Sneed's managerial responsibilities mainly consisted of supervising the one officer who was assigned to each shift he worked, in contrast to Monaco where the plaintiff was upper level management at a large insurance company, overseeing each of the company's offices on the eastern seaboard. Monaco, 359 F.3d at 297; (Pl.'s Appx., Ex. 1, Sneed Dep. Tr. at 54-57.) These key factual differences between Monaco and this case sap much of Monaco's authority over the similarly situated analysis we engaged in prior to denying summary judgment for the College. Further, as stated above, Monaco does not stand for the proposition that a subordinate is, as a matter of law, unable to serve as a comparator to his supervisor. For these reasons, we find that Monaco does not provide grounds on which to reconsider our summary judgment order.

## II. Additional Cases Cited by the College

In the College's Sur-Sur-Reply, it cites four non-precedential opinions of the Third Circuit in further support of its argument that Sneed is not similarly situated to his comparators as a matter of law. (ECF 52, Def.'s Sur-Sur-Reply ("Def.'s SSR") at 2 (citing Carter v. Midway Slots & Simulcast, 511 F. App'x 125 (3d Cir. 2013); Norman v. Kmart Corp., 485 F. App'x 591 (3d Cir. 2012); Wilcher v. Postmaster Gen., 441 F. App'x 879 (3d Cir. 2011); Hodczak v. Latrobe Specialty Steel Co., 451 F. App'x 238 (3d Cir. 2011)).) It also relies on four decisions from this District. (Id. at 3 n.3.)

Having carefully reviewed these cases, we conclude that none holds that a plaintiff's supervisory status over his comparators is determinative to the comparator analysis. To the

3

contrary, each case illustrates that it is one factor among several that, when taken together, may require a court to find judgment appropriate as a matter of law. See Carter, 511 F. App'x at 128 (holding that the plaintiff and his comparators were not similarly situated after comparing their conduct and respective positions at work, indicating that the inquiry is fact-intensive and does not hinge solely on the fact that one may be subordinate to another); Norman, 485 F. App'x at 593-94 (affirming summary judgment on age and gender discrimination claim based on failure to proffer similarly situated individuals where the employees the plaintiff put forth "either were her subordinates or did not commit violations of the same scope and scale as she," again showing that a plaintiff's supervisory role is one factor among many that go into the similarly situated analysis); Wilcher, 441 F. App'x at 881-82 (stating that the similarly situated determination takes into account several factors, and affirming the district court's finding that the plaintiff was not similarly situated to proffered comparators due to their different job responsibilities, different misconduct, the plaintiff's supervisory role, and the fact that the comparators were of multiple races and both genders); Hodczak, 451 F. App'x at 242 (affirming summary judgment in age discrimination case because the plaintiffs failed to offer valid comparator evidence, where the comparators had engaged in different misconduct, and where one comparator held a non-supervisory role).

### III. Sneed's Burden to Prove Pretext

The College also moves for reconsideration on the basis that the Court failed to address Sneed's burden to prove pretext. The Court recognizes that even if Sneed is able to make out a *prima facie* case of discrimination, his claim cannot withstand summary judgment if he is unable to point to an issue of fact regarding whether the College's articulated reasons for his termination were pretextual. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804 (1973). To that

end, and to make explicit what was the basis for denying summary judgment, the Court holds that Sneed has shown a genuine dispute of material fact on this point, by presenting evidence from which a jury could "disbelieve [the College's] articulated legitimate reasons" for terminating him. Cook v. City of Phila., No. 14-5842, 2015 WL 4273319, *6 (E.D. Pa. July 15, 2015). Specifically, the rapidity with which the College moved to place Sneed on administrative leave and terminate him rather than take less severe disciplinary action may evidence pretext.[1]

**IV. Conclusion**

For the aforementioned reasons, the College's Motion for Reconsideration is denied.

O:\CIVIL 16\16-43 Sneed v Swarthmore College\16cv43 order re mot for reconsideration.doc

---

[1] We note that the Third Circuit's recently-decided precedential opinion Castleberry v. STI Group, __F.3d__, 2017 WL 2990160 (3d Cir. 2017) provides further support for our conclusion. There, the court held that a plaintiff must establish that he suffered "severe or pervasive" discrimination in order to prevail on a hostile work environment claim, and that a single instance of discrimination can be sufficient to state such a claim if that incident was "adequately 'severe.'" Id. at *3. The court reasoned that a supervisor's use of a racial slur, "in front of [the plaintiffs] and their non-African-American coworkers, . . . accompanied by threats of termination . . . constitutes severe conduct that could create a hostile work environment." Id. at *4. Although Castleberry considered a different type of claim than that at issue here, and concerned a motion to dismiss rather than a motion for summary judgment, it is still instructive insofar as it illustrates the Third Circuit's continuing commitment to granting significant leeway to race-based discrimination claims.